Board 17-0574 Monterey Coal Company v. Workers' Compensation Commission Council, you may proceed. Thank you, Your Honor. May it please the Court, Council. Bob Mueller here on behalf of Monterey Coal Company. This is a 19-H petition case, which is, I think, a little unusual. But the claimant has to prove in these cases that there's been a material change in his, in this case, pulmonary condition between the time of the first hearing on 2413 and the time of the second hearing on 5516. I want to take a look at his testimony. 5516, he says he's been on oxygen since the hearing before on 2413. It's a little misleading, because at the time of that 2413 hearing, he'd already been on oxygen for about seven weeks, since December of 2012. 5516, he says he never takes off the oxygen. 2413, he testified he's on oxygen 24 hours a day. In addition, Dr. Paul testified it's his understanding that once this guy got put on oxygen, he never went off oxygen. 5516 says he needs help every day around the house. 2413, he says his stepdaughter and a friend help inside the house, and that he gets his yard, hires somebody to get his yard done. Can I ask you a question? Sure. I read your brief on this issue. Is it your contention that this man was more than 15% loss of a man as a whole at the time of the first decision? I guess the answer is yes. Because it is, you can't. It's law of the case. You didn't like the 15%, you should have appealed it. You didn't. He appealed it, took it to the commission. The commission affirmed the arbitrator, who found 15% of a man as a whole. He took an appeal to Macoupin County and appealed that and dismissed that appeal. 15% of a man as a whole, as of the first decision, is the law of the case. That's period. You can't argue against that. Now the question is, is his disability larger than 15% of a man as a whole? The commission said yes it is, he's 85%. So I don't think you can argue against the 15%. You don't get to re-argue that case. And I'm not trying to do that. What I'm saying here, the point of a 19-H case, Your Honor, is to analyze this guy's condition as of the time of the first hearing and the time of the second hearing to determine whether his condition has materially worsened or his disability has materially increased since that hearing. Well, I suppose if you have to accept the fact that he was only disabled to the extent of 15% of a man as a whole at the time of the first hearing, and he is now disabled, according to them, to the extent of 85% of a man as a whole, then his disability has increased. What you want to say is he wasn't 15% of a man as a whole at the first hearing. He was the same condition he is today. That's what I've argued. Correct, Your Honor. I don't think you can do that. But that's what the medical evidence in this case says. Well, but law of the case is law of the case. But the analysis... Go on. Sorry. But my point is, Your Honor, the analysis in a 19-H is what's his condition as of 2-4-13 compared to 5-5-60? 15% compared to 85%. But that's not what the medical supports. But you can't argue against the 15%. So where are you? You're arguing it's based on the medical, he's still 15% of a man as a whole? I suppose you could argue that. Yeah, you almost have to. You could argue in reverse and turn around and say, well, the medical said he was in this condition at the time of the first hearing, 15% of a man as a whole, and the medical is the same today. I guess he's still 15% of a man as a whole. Well, that you could argue. And is that your argument? Well, I don't think that's really what his argument is, but that would be the only way around it, wouldn't it? The argument is, my position is, as you know from reading the brief, his condition as of 2-4-13 is essentially the same as it was at the time of the second hearing on 5-5-60. That's the argument. Because that's what the medical supports, Your Honor. So there was no material increase. That's right. Exactly. I have a question about this that I just for the life of me can't understand. He got 15% of a man as a whole, which is 75 weeks at the time of the first hearing. The commission now says, and you've got to really catch their language. The commission now says, finding that petitioner's permanent disability has materially increased to the extent that he is now 85% of a person as a whole. And they awarded him, what, 425 weeks? Is 425 weeks equal to 85%? Or is 425 weeks equal to 70%? Because he already got 15% of the 85. Well. Which is it? I mean, I don't know. The 85% is 425 weeks. Okay. So if he is now 85%, but he already got an award for 15%, don't you take the 15% off of the 85% and only give him the difference? Yes. Or he's recovered for 15% twice. Correct. I agree. So Monterey simply stated gets a credit or an offset for the 15% that was paid? Yes. Okay. Legally as well as logically speaking. Exactly, Your Honor. Which are not always the same. Exactly, exactly right. Which are not always the same. That's right. So why were they wrong? There's no increase. He's on oxygen now. He can't walk up and down stairs. The doctor said he may need to breathe. How do we conclude there was no change? Well, the claimant himself justified at the first hearing that he couldn't go up and down stairs. He said he couldn't walk very far before becoming short of breath. He'd already given up motorcycle riding for many years. He was having help with everything. He was on oxygen. But he wasn't in an electric wheelchair, was he? I'm sorry? Was he in an electric wheelchair? He was. There is no evidence. As far as I know, Your Honor, there's no evidence that he was in an electric wheelchair at that time. Dr. Chopra indicated, his family doctor obviously, that even back to December of 2011 he was having trouble carrying a bag of groceries. At his first deposition in 2012, Dr. Chopra indicated he couldn't perform work requiring manual labor. Dr. Chopra indicated in his second deposition that the claimant had severe COPD at his first deposition and he had severe COPD at the time of his second deposition. The severe COPD caused the need for the oxygen to be prescribed, which it was 12-18-12. Dr. Paul indicated that it's a significant point in someone, in this case Mr. Newnaver's medical care, when he cannot breathe without oxygen. To be prescribed 24-hour oxygen, he must have a severe pulmonary problem. And again, as I said, once he was on it, he never got off it. The point obviously is, this guy was already on oxygen. He already had the issues that he testified to at the first hearing. He had severe COPD. There's no indication by any doctors, by Dr. Chopra, Dr. Tudor, Dr. Paul, that this guy's condition got worse from the time of the hearing on 24-13. Wait a minute. Didn't Dr. Paul say that when he evaluated the claimant for the second time, he concluded that his shortness of breath had worsened dramatically since 2008 and that his pulmonary function testing demonstrated obstruction much worse than in 2008? Didn't Paul say that? Yes. But 2008 doesn't matter was my point in my brief, Your Honor. 2008 is not the relevant time frame. The relevant time frame starts with the hearing on 24-13 because that's what the case law says. Was he on oxygen then? Yes. 24-13? Yes. Okay. Yes, he'd been on oxygen about seven weeks at that time. Although the claimant testified his condition worsened considerably. And then he testified as to specifics, all of which he'd already testified to in general, not the specific exact words, but he testified, you know, he can't do stairs at his house. Well, he'd already said he can't do stairs. He has help around the house. He'd already said that. I mean, it's the same thing. So you're saying that there's absolutely no difference in mobility, et cetera, since the first award of 15%? I'm not sure no difference, but not a material change, Your Honor. I mean, there may be minor changes, and I cited a case to that effect. Yeah, there might be a minor something here or there, but nothing significant. A material change is really an important something that happens in the course of the medical treatment, in my opinion. It seems like it has to be. And here, I think it was the oxygen being prescribed in December of 2012. That's the material change, and that happened before the first hearing. That's why there's no change. Something you said was interesting here, that there has to be a demonstrable change in medical treatment. Do you think that's the key? Well, it should be shown by the medical treatment, I think. I mean, if Mr. Newnaper himself can come in and make some testimony, okay. But as I already said, he didn't. So that's why I'm saying in this case. So he didn't say there was any activity that is significantly changed or has changed. I mean, significant would be some find or fact. But there's no activity that today he's incapable of doing that he was not capable of doing, or incapable at the same time in prior time at 15%, right? Yeah. My problem, Your Honor, is the way Mr. Newnaper said some of the things he said. I think they were misleading, such as, oh, I've been on oxygen since the first hearing. Well, that's true, but he was on oxygen before the first hearing. Okay. So I think he was saying things that, yeah, well, I haven't in the last couple years, since the other hearing, I haven't been able to do this. Well, he testified the first hearing, he didn't do it. So it's not like he didn't say certain things. But my point, again, is that it's the same stuff that he said at the first hearing. I had no clue. Material change. Right. Exactly. Can you explain or maybe expand on your suggestion that a remand is required? In your reply brief, you wrote the commission also erred in its award of 425 weeks and failed to say when the claimant's condition materially changed requiring a remand. Your Honor, one of the things that I think the commission didn't do, I don't think they did, and I hate to say this, but didn't do their job in this 19-H. Maybe they hadn't had one before like this. I don't know. But it seems to me, and as I was kind of saying before, material change occurs at some point. Now, I know it's a gradual thing up to maybe to a point. But in this case, for instance, it wasn't just as all of a sudden on 12-18-12, this guy went from a mild problem to needing oxygen. He worked up to it. But the point is that's a material change to me when oxygen is prescribed. Okay. Taking ahead to your question, the commission didn't say when there was a material change. They didn't give any specific facts. They gave general, all the medical supports this, or the record in general supports this. They don't give specific facts. And I think in a case like this that they need to do that. Now, obviously, I'd rather this court just reverse them and say, no, he didn't prove his 19-H petition. But what I'm also saying alternatively is they didn't give specifics enough, which they should have done. Just, oh, yeah, he had a material change in condition. Well, when did that happen? What was it? I mean, they gave a lot of facts. But then in the conclusion, when they reached, you know, saying, hey, yeah, he proved it, they didn't do that. They didn't say, well, which specific facts? Which, you know, normally, in my experience, that's what both the arbitrators do and the commission does. They may go through all the facts. But then when they reach the conclusion, they say, well, based on these specifics, we find this. And I think that's what Arbitrator McCarthy did in his decision, the initial hearing in this case. I don't think I have much time. But as you know, I would like the court to reverse the commission here and find that the claimant did not prove a material change in condition pursuant to Section 19-H. Thank you very much. Thank you, Counsel. We have time for five. Counsel, you may respond. May it please the Court, my name is Bruce Resor. Mr. Mueller. Mr. Resor, can I get something out of the way before we get into the rest? Did your client get paid 75 weeks for 15% of the man as a whole? Yes. So they're entitled to credit for those 15 weeks? I don't believe so. Why not? Because I believe that the commission, inarticulate is not the right word. They messed up in the way they wrote the decision. And they cleared it up in the end. Specifically, they say 85%. And it looks like it's going that way, these 85%. But then when they get down to the important part, when they say, Monterey, you've got to pay this, the part where it says, it is therefore ordered, then it all clears up. Because at that point, they say, quote, it is ordered that respondent pay petitioner a sum of $567.70 per week for a period of 425 weeks, as provided in Section 8D2 of the Act. For the reason that, because petitioner sustained a material increase in his disability, how much of the increase? To the extent of 85% of a person as a whole. That would be a total permanent. It would be a 100%, but not a total permanent. Well, 100% of a man as a whole would be, you're entitled to 70. But the beginning says, material increase to the extent that he is now permanently disabled to the extent of 85% of a person as a whole. That's what they wrote. If he's now 85% and he already got paid for 15%, they should be entitled to credit for that 15%, because now he's 85%. That's what they said. I understand what you're saying. I would like you to look at it in a different light. I would like for you to look at this. There's clearly a conflict in what the commission wrote. They wrote one thing one time, 85% man as a whole now. But clearly when they skip the part that says it is therefore ordered, what I consider to be the real meat of it, saying what you've got to do, they said 425 weeks. That is what they said that it had increased. And there's room to fit. 15 and 85, that's 100. It just doesn't continue. It's just 100 weeks. So they have the power to do that. And you have to pick which one do they mean. They said two different things. And I say that the specific always rules over the general. And the specific is in the it is therefore ordered part, where it describes the weeks. And it said why that number of weeks? Because he's increased in his disability. How much? To the extent of 85%. That refers to the increase. I was an English major. I remember a lot of it, not all of it. But as that sentence is constructed, the 85% is the increase. If you look at that sentence. So there's clearly a conflict. So if you add that math, so then you're concluding is totally permanently disabled. I think it's clearly totally disabled. But when you do it this way, it doesn't get to go on. If the man lives beyond 500 weeks, it stops. And so there is a big difference. And it's in his record. So just holler at me when I've got to stop. But at the commission argument, the initial commission argument, I asked for 85%. And I said because I would like this man to get his award before he dies. And if you go with total permanent, it may be harder. And, of course, all three doctors said he was totally permanently disabled. But it adds up the same, doesn't it? Well, except that it doesn't continue. If you get 100 weeks. You're right. So it fits. They have the power to do it. They can do it. They spell it out. Why should we be the ones to try and figure out what in heaven's name they meant? Maybe we should send it back and have them figure out what they meant. I got two things to say about that. The first is for about eight years I haven't been able to figure out what they mean on a number of cases. It's just the way it is. I'm getting older. But this man quit mining 12 years ago. He filed his first case 11 years ago. The truth is he got 15% on that first one. That was wrong. But it's the law. He got 15%. I appealed. Then we dropped that appeal and went to the 19-H because the guy's on the verge of death. And we wanted him to see his award sometime before he died. That's why that happened that way. So if it's remanded, and if you have to do that, the only way you know is if you have to remand it. To make a determination as to whether this man is supposed to get an additional 425 weeks or they're supposed to get a credit for 75 weeks, they must pay the difference. Because if they don't, you get penalties. They may not have to pay that last 75 weeks pending a determination by the commission. But the only thing that would be at issue, 75 weeks, not the remainder of it, that wouldn't be at issue at all. They'd have to pay that. They can't stop paying them. The only thing that would be at issue if we sent it back is, is it 425 additional weeks or is it 425 minus 75?  They'd have to pay that. And they'd have to pay it immediately or commence paying it immediately. If not, Mr. Wasore, I would bet you'd be in there asking for penalties because it's an undisputed issue. Rather than trying to convince you what to do, I'm trying to frame the question so you can decide what to do. Well, do you disagree with that, the practical side of things here? I wish I could. I really couldn't follow. Not because of the way you said it. It's not normally the way in disease cases we deal with things. That kind of logic doesn't come up very often in disease cases. So I'm not familiar with it. Because there's certainly merit in what you're saying based upon what's on the last page of their decision. That the petitioner sustained a material increase in his disability to the extent of 85%. The 85% modifies the increase. But on the first page of the decision, it says, has materially increased to the extent that he is now permanently disabled to the extent of 85%. So it's, I mean, it's a direct comment. It is. But my question is, is there a way to resolve that here? And I think there is without sending it back. And that is to go to one of the rules of construction, the specific rules over the general. Sure, they said 85%. But that one, they actually did it. And they described why. It's clear. And it's not subject to interpretation. It is therefore ordered. So you're suggesting that we agree with the principle that they're entitled, that Monterey is entitled to 75 weeks credit. Then we can order today that Monterey is to pay 350 weeks to your client immediately, rather than send it back. If we send it back and the commission determines that what they really meant was it was an 85% increase, then what's in jeopardy is the additional 75 weeks that your client could have received. Here's why I'm confused. He did receive it. Okay. That happened back in the distant past. And then we file a new case. Okay. Now, so that money's out there. Now, the commission in the is therefore section says his increased or worsening condition is 85% of the man. That's how much more he is. Is that reasonable? Well, every single doctor said he was totally permanently disabled. So that's reasonable. Do they have the power to do it? Yes, they do. Does it fit? Yes, it does. Well, Joel, can I ask you, have you received any portion of the 425 weeks yet? No. Okay. So if we were to turn around and say, look, the commission found we can't tell from the first paragraph to the last paragraph what they wanted, the only thing that would be at issue would be 75 weeks. They would have to pay you, immediately start paying you the 350 weeks. They would have to. Because if they didn't, you'd be in there for penalties and you'd get them. Because that would be undisputed. There's nothing left other than a dispute over 75 weeks. And the commission would have to pick that. But I suppose your argument is don't pick. Pick forum and pick forum under the specific controls over the general. But the question is, is it really the specific over the general? They're both pretty specific. One's in the decretal section and the other is in the finding section. I don't know. That's two of us. The remedial act to be liberally construed to do justice to this man who's dying right now. The policy of the act would suggest that the decretal should be followed. It should be followed and do just what it says. It is therefore ordered that. And that's what we should do and not send it back. I think we understand that issue now. What about this argument that there was no material increase to begin with? I disagree with the commission a lot. Not on this case. Some of the time Monterey disagrees. There's a lot of money at stake. I expect them to appeal all the way to the end. They did. I'm sorry. I kind of missed. Could you? Yeah. Okay. We have to show that there's a material or you have to show that there's a material increase in his disability. And opposing counsel is saying, well, there's stuff in there that he didn't say, let me explain, that he didn't have before. You know that a lot of times I come up here and I give him an emotional argument. Today I'm just the opposite. Everything is just cut and dried. He's specific over the general, whatever. And here he got 15%. He was much more disabled than that. He was only the second guy in my 30 years of doing this that testified holding his oxygen. You know what I think? I think the arbitrator thought it was a prop. I don't think the arbitrator believed him. How else would the arbitrator give this guy who his old doctor said he's going to die and he's holding his oxygen 15%? Well, I think that's the answer. They didn't believe him. That may be behind the curtain, but what's on the stage? What's on the stage is 15%, there's no way around it. He was 15% before. You start with 15, you've got an increase. A material increase. Yes. What was the material increase in his disability? His material increase was 85% of a man as a whole. That was the amount of the increase. Why did they? Let's go back to the evidence. What is there that he's more disabled than he was when they said 15? All three doctors, including Monterey's doctor, said he's totally disabled. You have the testimony of the guy. And you have the ability of the same people who made the first decision to look and not say, oops, look at this guy now. We didn't do right on the 15. Let's do right now. I can't tell you that's what they were thinking, but that's a very logical explanation of what they were thinking. But they get to make the decision. They did make the decision. And I think the only question about it is, well, it's as you said, Justice Hoffman, whether Mr. Mueller or Monterey or I like it or not, 15% is what they did the first time. Then they did 85% the second time. It fits in 100. Well, I view it in a little different way. 15% is the law of the case. That's 15% as a man as a whole. They turn around today and they say, this man in his present condition is disabled to the extent of 85% of a man as a whole. That's his condition today. We're stuck with 15%. And if his condition today, according to the commission, is 85% as a man as a whole, you know, 85 is obviously more than 15. You've got an increase. I have a practical question to ask you, though, and I don't know the answer to this question. If we were to send this back for a determination on the 75 weeks, and they must pay the 350 because it would be undisputed, since the date of the commission's decision, by my count, some 88 weeks have expired. Do they have to pay you that in a lump sum immediately, or do they commence starting to pay 425 weeks or 350 from the day we issue our opinion? Not from the day you issue it, but from the day the commission issued it. Well, the commission issued, I think, August 19, 2016. So you're affirming what they did. Well, we would be affirming the increase. 88 weeks have passed, I believe, since August 19, 2016. Do they have to write you a check for those 88 weeks immediately? At least. Yes, at least. And then commence paying either up to 350 or up to 425, depending on what the commission says. I suppose that's where they could do it. It's a lump sum. Lump sum. It's a lump sum. Oh, it's a lump sum. Oh, yeah. Man is a whole is a lump sum. It's not man is a whole. He's been paying the sum of $567.70 per week for a period of 425 weeks. It's not lump sum. Because the way you calculate the amount that you're paying. I don't think so. Not the way this is. If they wanted to write this as a man is a whole, they would have said man is a whole, and Mr. Resor was complaining because it would end at the man's death. He wanted it paid in weekly amounts, so it wouldn't end at his death. What it says here is to the extent that 85% of a person as a whole, that is how much they increased it, 85% per person as a whole, because of how much worse he has gotten. No, no, we understand that. What do they have to pay him? They don't have to pay him a lump sum. They've got to pay him a lump sum, I believe, for the 88 weeks that has expired. But this is not a lump sum payment. This is pay the sum of $567.70 per week for a period of 425 weeks. The same way as 75 weeks was X number of dollars a week for 75 weeks, wasn't it? I read it as man is a whole, and I read it as a lump sum. Your argument is you can't spend the money from the graveyard. That's right. My argument is, in fact, one of the things here is in Monterey's argument that they gave this morning, I'm guessing that the only time that we could file a worsening condition claim was when he died, because he can't get any closer to death than this guy's been. And so I think that you have the ability to do it, whether you should or not, whether you will or not, but you have the ability to affirm this where it says it is therefore to select that option. And we can do justice, and hopefully this man can see the award before he dies. I've seen, I'm going to be 71 in about a week, and I've seen a number of people die, my friends, my relatives, the ones that die quickly you don't see usually. But I've seen the ones that are looking for a way to die. That's the way this man is. According to all the docs, if he should have died earlier, he didn't. Thank you. Thank you, Counselor. Counsel, you may reply. Actually, the way that this works is that if the case is tried three months before, before Mr. Newneighbor gets oxygen, and he gets 15%, and then he gets oxygen, which is a material change in condition, then you come in and you file your 19-H. That's not how it worked in this case. He had severe COPD and was on oxygen at the first hearing and the second hearing. The condition is virtually the same. Wasn't there testimony, though, that some of his conditions, regardless of what, if he was on oxygen or not, at the time he could walk a few steps, the stairs, he could do some activities on his own. He needed somebody to mow the grass, perhaps, but he did some of the cooking and things. But then later, at the next hearing, he was basically bedridden and couldn't do anything for himself, couldn't do any stairs. Isn't that a worsening condition? Well, a worsening of those conditions. He said at the first hearing, I can't walk very far before I get breathless. Now, to me that says a lot. Obviously, he's on oxygen, so you would expect that. I mean, as counsel said, he had oxygen on him at the hearing, the first hearing. But the point is, I guess there was not a specific thing saying, oh, I can walk five steps or six steps. He just said, I can't walk very far. Now, is that different than he now says he gets winded going to the bathroom? I don't think it is. It's not a material change in that. And Karen Berry, his caretaker or whatever word you want to use for it, she said he does sometimes get out to the kitchen to get a drink or water or whatever. He's moving around, but how far is it? I don't know. But it seems to me it's no different from the first hearing where I can't go very far before I'm short of breath. He said it, and again, with the steps, he said it at the first hearing. I can't climb steps. I've got friends that live on the second floor. I haven't seen them in years because I can't go up the stairs. So I think it's the same, as I think I said before, but I don't think there's a significant difference in his testimony about what he did the first time at the first hearing, what he was able to do and what he said at the second. He was having help doing everything then in the house and outside the house at the first hearing as well as the second. Can you help me out on the mechanics of payment? I don't understand this. I know if you settle a case, you get paid a lump sum. But in this particular case, they awarded 75 weeks. He gets a check once a week for 75 weeks, doesn't he? A $567? The original? The original, it goes back to. . . The original you paid. How did you pay that? We paid it in a lump sum because 75 weeks had already elapsed. It had already elapsed. So now the question becomes, if this were to go back for determination as to whether he was entitled to an additional 350 weeks or for 25 weeks, 88 weeks have elapsed. You'd give him a lump sum for the 88 weeks. Is that not correct? That's what I advise my clients to do. And then you would pay him $567 a week for the next either 350 or for. . . Okay. All right. I understand. Thank you. The one thing I wanted to point out. And if he would expire before the expiration of those weeks, what happens? He's done. No, if it's a permanent total, he's done. What if it's not a permanent total? I'm sorry. I mean, I don't think he's married, you know, spouse, estate, I mean, be entitled. . . To the remainder. To the remainder. But it's a weekly benefit, as Your Honor mentioned. So, you know, I would have to argue that maybe it ends. It's a weekly benefit, just like a permanent total. I don't know the answer. A permanent total would end. Yeah. A weekly benefit. Well, I wouldn't dissent also because it's a weekly benefit. Yeah. On pages 1, 19, and 20 of the commission decision, they indicate the same language of he's now permanently disabled to the extent of 85%. And there's a slight difference in the order part, as was discussed. But I think you can interpret, and I would interpret, the order part to being exactly the same thing as the three other places in the decision. So that it's an 85% now, you subtract the 15, and you're left with 7. Well, if the missing word is additional in the full preamble, so to speak, the findings. In the order part? No. I'm sorry. You said you were reading something about 85% before you get to the decretal portion. Pages 1, 19, and 20? Yeah, on pages 1, 19, and 20, it says the same language. He's now permanently disabled to the extent of 85%. Okay. So what they did, I think, is just switched the language for no apparent reason, and didn't put in he's totally disabled to the extent of 85% in the order. But that's what they mean. I don't think they tried to change things up in the middle, at the end of the decision, after saying it three times earlier. Thank you, Your Honors. Thank you, Counsel Ball, for your arguments in this matter. We'll be taking our advisement into a positional issue.